UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| HAROLD RHODES,<br>     Plaintiff,<br><br>   -vs-<br><br>Kilolo Kijakazi,[1]<br>Acting Commissioner of Social Security,<br><br>     Defendant.<br>_____ | Civil Action No.: 4:20-cv-02711-TER<br><br><br>**ORDER** |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for supplemental security income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

### I. RELEVANT BACKGROUND

**A. Procedural History**

Plaintiff filed an application for SSI on October 6, 2017, alleging inability to work since October 6, 2017. His claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held on February 26, 2019, at which time Plaintiff and a VE testified. The Administrative Law Judge (ALJ) issued an unfavorable decision on June 6, 2019, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 23). Plaintiff filed

---

[1] Recently, Kilolo Kijakazi became the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), she is automatically substituted for Defendant Andrew Saul who was the Commissioner of Social Security when this action was filed.

a request for review of the ALJ's decision, which the Appeals Council denied on May 26, 2020, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3). Plaintiff filed an action in this court. Plaintiff filed this action on July 23, 2020. (ECF No. 1).

**B.     Introductory Facts**

Plaintiff was born on September 16, 1956, and was sixty-one years old at the application date. (Tr. 87). Plaintiff has at least a high school education and has past relevant work experience as a kitchen helper and laundry laborer. (Tr. 22). Plaintiff alleges disability initially due to pins in right ankle, rod in left leg and hip, spinal problems, kidney problems, right ear hearing loss, seizures, high blood pressure, and depression. (Tr. 87-88).

**C.     The ALJ's Decision**

In the decision of June 6, 2019, the ALJ made the following findings of fact and conclusions of law (Tr. 15-22):

1.  The claimant has not engaged in substantial gainful activity since October 6, 2017, the application date (20 CFR 416.971 *et seq*.).

2.  The claimant has the following severe impairments: degenerative disc disease (DDD) of the cervical, thoracic, and lumbar spine; status post fracture of L2 and L3 vertebrae; femoral fracture, status-post surgical repair; and degenerative joint disease (DJD) of the right knee (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except he can frequently engage in pushing and pulling with his left lower extremity. The claimant can never climb ladders, ropes, or scaffolds; can occasionally crawl; and can frequently balance, stoop, kneel, crouch, and climb ramps and stairs. The claimant can tolerate occasional exposure to hazards such as unprotected heights and moving machinery.

5.     The claimant is capable of performing past relevant work as a kitchen helper and laundry laborer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6.     The claimant has not been under a disability, as defined in the Social Security Act, since October 6, 2017, the date the application was filed (20 CFR 416.920(f)).

## II. DISCUSSION

Plaintiff argues the ALJ erred in the Listing 1.02 analysis. Plaintiff argues the ALJ erred in consideration of the combined effect of Plaintiff's impairments. Plaintiff argues the ALJ erred in the RFC determination. Defendant argues the ALJ's analysis here was sufficient and was in accordance with the applicable law and that Plaintiff has failed to show that the ALJ's decision is not based on substantial evidence.

**A.    LEGAL FRAMEWORK**

**1.    The Commissioner's Determination–of–Disability Process**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the

following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents him from doing SGA.  *See* 20 C.F.R. § 404.1520.  These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work.  See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982).  The claimant bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do.  The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525.  If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment.  20 C.F.R. § 404.1520(a)(4)(iii).  To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria."  20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2.     **The Court's Standard of Review**

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653

(4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.     ANALYSIS**

**Listing 1.02**

Plaintiff argues the ALJ erred in finding that Plaintiff's impairments or combination of impairments did not meet or medically equal Listing 1.02. Defendant argues that Plaintiff does not meet the requirements of this listing because he does not meet the introductory paragraph.

The "Listings," found at 20 C.F.R. part 404, subpart P, appendix 1, "is a catalog of various disabilities, which are defined by 'specific medical signs, symptoms, or laboratory test results.' " *Bennett v. Sullivan*, 917 F.2d 157, 160 (4th Cir. 1990) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). A claimant's impairment meets a Listing if "it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement." 20 C.F.R. § 404.1525(c)(3). When a claimant satisfies a listing by meeting all its specified medical criteria, he presumably qualifies for benefits. *See Bennett*, 917 F.2d at 160.

The impairment medically equals a Listing "if it is at least equal in severity and duration to the criteria of any listed impairment." *Id.* § 404.1526(a). If a claimant has a listed impairment, but:

6

1) does "not exhibit one or more of the findings specified in the particular listing, or" 2) exhibits "all of the findings, but one or more of the findings is not as severe as specified in the particular listing," the claimant's impairment is medically equivalent to the listing if the claimant has "other findings related to [his or her] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 404.1526(b)(1).

At step three, to determine whether a claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1, the ALJ must identify the relevant listed impairments and then compare the listing criteria with evidence of claimant's symptoms. *Cook v. Heckler*, 783 F.2d 1168 (4th Cir.1986).

Listing 1.02 requires:

1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), **resulting in inability to ambulate effectively, as defined in 1.00B2b**;
> or
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 Listing 1.02 (emphasis added).

The definition in 1.00B2b states:

b. What We Mean by Inability To Ambulate Effectively
(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity

> functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.00.

> As to Listing 1.02, the ALJ found:
>
> Particular attention was given to listing 1.02 for major dysfunction of a joint. However, the specified criteria required of the listing were not demonstrated by the available medical evidence. Specifically, the listing requires gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint( s ), and finding on appropriate medically acceptable imaging of joint space narrowing, bony destruction or ankylosis of the affected joint. The listing also requires involvement of one major peripheral joint resulting in inability to perform fine and gross movements effectively as defined in l.00B2c and/or inability to ambulate effectively as defined in l.00B2b. In this case, the evidence does not demonstrate that the claimant has the degree of difficulty in performing fine and gross movements as defined in l.00B2c or the degree of difficulty in ambulating as defined in l.00B2b.

(Tr. 18-19).

In the Listing analysis, the ALJ referenced the available medical evidence. (Tr. 18). Viewing the opinion as a whole, the ALJ noted evidence that after surgery Plaintiff eventually progressed in a few months to using a single cane. (Tr. 20). The ALJ had ordered a consultative exam after the hearing which showed:

> **The claimant's gait was noted to be normal and narrow based with the use of a right hand walking cane which was specifically felt not to be medically necessary (Exhibit 14F/13).** The claimant had normoactive range of motion in the following joints: elbow, forearm, wrist, shoulder, cervical spine, lumbar spine, hip, knee, and ankle. He had negative straight leg raises in both supine and sitting positions and full passive elevation of both legs in supine and sitting positions. It was also noted that the claimant laid straight back on the exam table easily and moved into the prone position on exam table easily. The claimant walked on his heels easily. While he had some difficulty walking on his toes, he could stand on his toes for extended lengths of time without difficulty. The claimant squatted easily and performed the heel-to-toe and tandem walks easily (Exhibit 14F/13, 14). The results of this examination is not consistent with the significant physical limitations alleged by the claimant.

(Tr. 21). Defendant further notes "Plaintiff admits that he does not need a walker, having "progressed" to only using a cane, when needed, citing Tr. 58-61, ECF 12 at 3." (ECF No. 13 at 11). Plaintiff's reply brief speculates that current use of a single cane does not mean he may not require a walker in the future. (ECF No. 14 at 1).

Substantial evidence supports the ALJ's Listing analysis. *See Jones v. Berryhill*, 681 Fed. Appx 252, 255 (4th Cir. 2017)("occasional use of a single cane does not qualify as 'inability to ambulate effectively' which, as noted above, is defined by regulation to require two-handed assistance with walking").

As a separate but related issue, Plaintiff points to Plaintiff's physical severe and non-severe impairments and argues: "The ALJ states he gave '[p]articular attention' to listings 1.02, 1.04, and 1.06; however, his review is notably silent as to the combined effect of all of Plaintiff's impairments." (ECF No. 12 at 4). As discussed above, Plaintiff cannot meet the agency Listing definition for inability to ambulate effectively, thus he cannot prove that his impairments, individually or in combination, meet the requirements of a Listing. Plaintiff has not pointed to which listing or how his impairments combined meet a listing, other than his prior ambulation argument.

In reply, Plaintiff purports that Defendant misunderstands Plaintiff's argument and then in conclusory fashion states that "when considered in combination, Plaintiff's severe and non-severe impairments render him disabled" without citation to evidence. (ECF No. 14 at 2). Plaintiff has not pointed to any outcome determinative error as Plaintiff cannot meet the Listings as discussed above even viewing impairments in combination.

**RFC: Medium**

Plaintiff argues the ALJ erred in assigning a medium RFC. (ECF No. 12 at 4).

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c). In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

In formulating the RFC, the ALJ considered Plaintiff's allegations. (Tr. 19-20). The ALJ then

10

found the statements concerning the limiting effects of alleged symptoms were not entirely consistent with the evidence in the record. (Tr. 20). The ALJ then reviewed Plaintiff's medical records beginning after hip surgery in September 2017. (Tr. 20). Over time, Plaintiff's gait improved and by December 2017, Plaintiff examined with a limp on the left and used a walker for balance. (Tr. 20). Plaintiff was in a car accident and hurt his knee in February 2018. Plaintiff was ambulating with a cane. (Tr. 20). The ALJ noted no acute knee injury on imaging and no treatment for such after February 2018. (Tr. 20). The ALJ noted March 2019 imaging that the ALJ requested showed intact post surgical changes of left femur and some degenerative changes in lower lumbar. (Tr. 21). The ALJ considered the consultative examination that was ordered after the hearing:

> The claimant was also referred to a consultative examiner following the hearing (Exhibit 14F). The examination of the claimant's spine noted his spine was without any bony deformities. It was nontender to palpation in cervical, thoracic, and lumbosacral vertebral and para vertebral areas. The claimant of both knees revealed that his left knee was nontender to palpation with no osteoarthritic changes and no anteroposterior laxity. The examination of the right knee revealed some osteoarthritic changes, but was nontender to palpation. There was no swelling, redness, or effusion in the right knee. The claimant's gait was noted to be normal and narrow based with the use of a right hand walking cane which was specifically felt not to be medically necessary (Exhibit 14F/13). The claimant had normoactive range of motion in the following joints: elbow, forearm, wrist, shoulder, cervical spine, lumbar spine, hip, knee, and ankle. He had negative straight leg raises in both supine and sitting positions and full passive elevation of both legs in supine and sitting positions. It was also noted that the claimant laid straight back on the exam table easily and moved into the prone position on exam table easily. The claimant walked on his heels easily. While he had some difficulty walking on his toes, he could stand on his toes for extended lengths of time without difficulty. The claimant squatted easily and performed the heel-to- toe and tandem walks easily (Exhibit 14F/13, 14). The results of this examination is not consistent with the significant physical limitations alleged by the claimant.

(Tr. 21). The ALJ weighed opinions by state agency non-examining consultants and found them to be persuasive because of the relative consistency with the findings and images of the post hearing

exam. (Tr. 21). The ALJ concluded by weighing the examiner's opinion:

> The consultative examiner, Woodrow Bell, M.D., noted a mostly normal physical examination, images of hip remain benign aside from incidental post-surgical findings, and it was suggested that the claimant remained capable of medium levels of exertion with some postural limitations and a cane was deemed not necessary for ambulation (Exhibit 14F). This opinion is found to be persuasive, as it is supported by a comprehensive firsthand evaluation and the review of images (Exhibits 13F-15F). In addition, it is generally supported with the benign findings of both and the claimant's lack of significant treatment noted throughout the record.

(Tr. 22).

As demonstrated above, the ALJ supported the functional limitations found in the ALJ's RFC determination with discussion and citation to substantial evidence in the record. An RFC is "an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." *Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). Based upon the foregoing, substantial evidence supports the ALJ's RFC.

### III. CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on

substantial evidence. Based upon the foregoing, and pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

October 13, 2021
Florence, South Carolina

s/ Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge